IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>ABIGAIL MARGARETE KNIGHT,<br><br>  Defendant. | CRIMINAL NO.  3:23-cr-51<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

## Table of Contents

I.     INTRODUCTION..................................................................................................1

II.    DISMISSED COUNTS SHOULD NOT HAVE BEEN SCORED PURSUANT TO GROUPING RULES, UNDER USSG §3D1.1…........................................................2

III.   A MITIGATED SENTENCE BELOW THE ADVISORY GUIDELINE RANGE IS SUPPORTED BY THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a)………….2

IV.    CONCLUSION……………………......................................................................8

I.     INTRODUCTION

On February 14, 2024, Abigail Margarete Knight accepted responsibility for her conduct by pleading guilty to Counts 8 and 11 of the 12-count indictment, both counts charging production of child pornography contrary to 18 U.S.C. § 2251(a) and (e).  Additionally, she conceded guideline issues and made substantial factual stipulations, also reflective of her accountability.  This matter is scheduled for a sentencing hearing on June 11, 2024, at 10:00 a.m.  The final presentence report provides a total offense level of 43, and a criminal history

category of I, resulting in an advisory sentencing guideline range of 720 months, as the guideline range exceeds the statutory maximum penalty. (PSR, ¶ 152). This applicable guideline range is not contested, however, there is an objection to the grouping calculation. This objection does not change the resulting guideline which is at the statutory cap.

A sentence below the advisory guideline range would be sufficient, but not greater than necessary, to fulfill the purposes of sentencing. Specifically, a downward variance is supported by the following: (1) Ms. Knight's personal history of being subjected to physical and emotional abuse; (2) the largely untreated mental health needs Ms. Knight has; (3) available sentencing options, including effective rehabilitative resources to address Ms. Knight's history, short of the imposition of an extremely severe sentence; (4) and the improbability of Ms. Knight offending in the future.

**II.     DISMISSED COUNTS SHOULD NOT HAVE BEEN SCORED PURSUANT TO GROUPING RULES, UNDER USSG §3D1.1.**

As practical matter, the elevated guideline calculation, incorporating dismissed counts for grouping purposes, does not alter the ultimate guideline range. Without the grouping application, the applicable guideline range is still controlled by the statutory maximum sentence. However, Defendant maintains that the grouping should not apply, as the plain language of the Federal Sentencing Guidelines limits grouping to convictions. Pursuant to USSG §3D1.1, Procedure for Determining Offense Level on Multiple Counts, the grouping rules apply "[w]hen a defendant has **been convicted** of more than one count." USSG §3D1.1(a) (emphasis added).

**III.    A MITIGATED SENTENCE BELOW THE ADVISORY GUIDELINE RANGE IS SUPPORTED BY THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a).**

A.  Legal authority.

Title 18 U.S.C. § 3553(a) provides that the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. Paragraph 2 refers to:

> "The need for the sentence imposed - A) to reflect the seriousness of the offense; to promote respect for the law, and to provide just punishment for the offense; B) to afford adequate deterrence to criminal conduct; C) to protect the public from further crimes of the defendant; and D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

The sentencing factors to be considered by the court include, the nature and circumstances of the offense and the history and characteristics of the defendant and the kinds of sentences available. 18 U.S.C. § 3553(a)(1). In addition to these sentencing factors, the court is permitted to entertain policy considerations pertinent to the relevant guideline section. *Rita v. United States,* 127 S. Ct. 2456, 2465 (2007). The court may vary outside of the guideline range based on a policy disagreement with the underlying guideline section. *Kimbrough v. United States,* 128 S. Ct. 558, 570 (2007). The sentencing court "may not presume that the guidelines range is reasonable," but rather "must make an individualized assessment based on the facts presented to arrive at a sentence that is sufficient, but not greater than necessary." *Gall v. United States*, 128 S. Ct. 586, 597 (2007).

B. Analysis.

The determination of a reasonable sentence involves full consideration of the § 3553(a) sentencing factors. Ms. Knight understands the severity of her offense conduct and has expressed great remorse for it. She feels "intense shame and regret for the pain she has caused

her daughters." (Defendant's Exhibit[1] A, p.7). The impact her conduct has had on her children will continue to weigh on her. However, Ms. Knight's personal history provides a broader context to her choices and conduct and also suggests that she is a low risk to reoffend.

Ms. Knight's early life was plagued with instability and abuse and has had a significantly negative impact on the quality of her life and ability to function successfully. As a child, she was placed in the primary custody of her mother, following her parents' divorce in 1993 (when she was 4 or 5 years old). (PSR, ¶ 109). Her mother suffered serious mental health issues and abused Ms. Knight for years. (*Id*., *see also* Def. Ex. A, p. 3). Her mother abused her physically, at times beating her with objects. (*See* PSR, ¶ 109, *see also* Def. Ex. A, p. 3). Her mother also emotionally and psychologically abused her. *Id*. For example, she would call her demeaning names, use pets as a manipulation tool, abandon her because she was a "bad" kid, tell her that her father was coming to kill her, and a variety of other damaging scenarios. *Id*. She also isolated Ms. Knight from friend relationships, teaching her friends could not be trusted. (Def. Ex. A, p. 4). Ms. Knight was not allowed to have friends at the home, and the home environment was not otherwise conducive to creating opportunities to interact with peers outside of the school setting. (PSR, ¶ 109). She tried to run away from her mother's care on several occasions, staying temporarily in residential placements, but ultimately, returned to her mother's care. (PSR, ¶ 109). The Department of Human Services (DHS) was involved with her family several times throughout her childhood. (Def. Ex. A, p. 4).

Ms. Knight's father confirms her traumatic history. In an interview with the presentence report writer, Ms. Knight's father consistently reports his opinion that the abuse Ms. Knight

---

[1] Hereinafter the abbreviation "Def. Ex." will be used to reference Defendant's Exhibit.

suffered has had a long-lasting impact on her life. (PSR, ¶ 109). Likewise, he has observed the isolation she continues to suffer. (PSR, ¶ 112). She has never learned to develop healthy friendships and support systems, based on her traumatic life experiences.

As an early adult, the pattern of abuse continued, as she entered into an abusive relationship with Jeremy Lumbus. (PSR, ¶ 110). In that relationship she was beaten, raped and emotionally abused. (PSR, ¶¶ 110, 118). Ms. Knight went to the hospital multiple times as a result of the abuse and suffered multiple concussions as a product of the assaults. *Id*. Mr. Lumbus would use her to steal for him, and she felt compelled to comply to avoid physical abuse. (PSR, ¶ 118, *see also* Def. Ex. A, p. 6). Mr. Lumbus has a criminal history that includes domestic violence and elder abuse. (PSR, ¶ 118). In addition to the physical abuse, Mr. Lumbus was controlling and kept her isolated. (Def. Ex. A, p. 5). He discouraged her from working, as confirmed by Ms. Knight's father. (PSR, ¶ 141).

Further, Ms. Knight reports an incident when she was 14 years old and woke up to a male stranger laying on top of her. (PSR, ¶ 110). She found her pants had been undone. *Id*. The incident happened while she was sleeping on the couch at her father's home. *Id*.

Likely interconnected with her extremely traumatic personal history, Ms. Knight has been diagnosed with and/or presents symptoms for a number of mental health conditions. There is also a familial link to mental illness through her mother. She was previously diagnosed with anxiety and depression, and ADHD when she was in third grade. (PSR, ¶ 126). She engaged in cutting behavior as a young adolescent. (PSR, ¶ 127, see also Def. Ex. A, p. 6).

The psychological evaluation prepared by Elizabeth Griffin, notes Ms. Knight meets the criterion for generalized anxiety disorder, major depressive disorder, and post-traumatic stress

disorder (PTSD). (Def. Ex. A, p. 14, *see also* pp. 6-8 and 11). Ms. Knight also reported obsessive compulsive behaviors that began in childhood. (Def. Ex. A, p. 6) (describing a fixation with the number four and patterns of behavior in repetitions of four). Her PTSD symptoms include nightmares, flashbacks of childhood trauma, irrational fear and safety and trust issues. *Id*.

At the Muscatine County Jail, where Ms. Knight has been detained, she receives medication for anxiety, depression and sleep. (PSR, ¶ 128). Prior to being incarcerated, Ms. Knight was prescribed Wellbutrin, sertraline, trazadone, and Ritalin. (PSR, ¶ 126).

Research suggests a commonality between Ms. Knight's tragic personal history, and that of other female sex offenders. "Female sex offenders typically have high rates of childhood neglect, emotional abuse, physical abuse and sexual abuse." (Def. Ex. A, p. 2). "Histories of poor coping skills, depression, alcohol/drug abuse, relationship issues, and overall higher rates of mental health issues are all common issues in this population." (quoting Johansson-Love & Fremouw). However, meta-analysis indicates an extremely low rate of recidivism for this population—estimated between 1% and 3%. (Def. Ex. A, p. 2) (citing Cortoni et al., 2010). The recidivism for females offending in conjunction with males is even lower, compared to a "solo" offender. *Id*. (citing Williams et al., 2019).

Thus, research suggests Ms. Knight's personal history was likely a contributing factor to her offense. She wants to get mental health treatment to address the impact her early life continues to have on her. (Def. Ex. A, p. 7). In contrast to the circumstances surrounding her offense, she has a desire to be a good mother. (*See* PSR, ¶ 112). The reality is that her goal is not possible in light of the circumstances. However, it is apparent that her own childhood not

only failed to prepare her to be a healthy parent, but it also severely damaged her ability to do so. Likewise, it compromised her ability to maintain a healthy sense of self-worth and autonomy.

The results of Ms. Knight's psychological evaluation reveal a variety of obstacles in her life relating to the past trauma she endured. She suffers severe depression that results in a lack of motivation and energy, and a feeling of helplessness and worthlessness. (Def. Ex. A, p. 6). She suffers flashbacks to her childhood traumatic experiences as a result of the PTSD. *Id*. Her anxiety leads to social avoidance and isolation. *Id*., p. 8. Her diagnoses impair her ability to manage daily life. *Id*. Testing suggests problematic interactions with others and significant susceptibility to influence from others. *Id*.

However, Ms. Knight does not present with traits or features of antisociality. *Id*. Her lack of both criminality and antisociality, bode well for rehabilitation. (See Def. Ex. A, p. 14, n. 9) (indicating she does not demonstrate traits and features of criminality or antisociality, which is an indicator of success in treatment and on supervised release). Her receptiveness to mental health services also supports successful rehabilitation.

Despite her abusive childhood and transition into adulthood, Ms. Knight's achievements demonstrate efforts on her part to rise above her situation. She graduated from high school at West High School, in Iowa City, as scheduled, despite the chaos at home. (PSR, ¶ 135). She describes a difficulty with reading comprehension that was not fully evaluated, but yet she completed her education. (PSR, ¶¶ 135, 137). She started community college after graduating high school, with an ultimate goal of earning a baker's certificate. (See PSR, ¶¶ 135, 138). She was overwhelmed by the demands of school and daily responsibilities and did not earn a degree. *Id*. However, this early post-high school education also overlapped with her tumultuous

7

relationship with Jeremy Lumbus.  (See PSR, ¶¶ 118, 136) (describing the timing of each).  She has maintained a relationship with her father who was a key support in her life.  (PSR, ¶ 109, 113).

A guideline sentence in this case is disproportionately severe.  Ms. Knight is currently 36 years of age.  A guideline sentence would effectuate the functional equivalent of a life sentence.  A sentence of that gravity is not warranted for someone who presents a very low risk of re-offending and whose mental health and trauma history contributed so heavily to her conduct.  Because there is a lengthy statutory mandatory minimum sentence, any sentence Ms. Knight receives will, with certainty, be substantial.  The time she faces is particularly substantial to her, as she has never previously been sentenced to prison.  (PSR, ¶¶ 95-101).  She has deep remorse for her conduct and recognizes she is responsible for a tremendous loss in her own life. The consistent availability of mental health services would support her successful rehabilitation, and she is receptive to services.  A guideline sentence is substantially more than what is necessary in this case to address sentencing objectives.

## IV.  CONCLUSION

WHEREFORE, Ms. Knight respectfully requests that, for the above stated reasons, the Court sentence her to a term of imprisonment which is substantially less than the advisory sentencing guideline range in this case.

                                    FEDERAL DEFENDER'S OFFICE
                                    101 W. 2nd Street, Suite 401
                                    Davenport, Iowa 52801-1815
                                    TELEPHONE:  (563) 322-8931
                                    TELEFAX:   (563) 383-0052
                                    EMAIL:  diane_helphrey@fd.org

                            By:  /s/ *Diane Helphrey*
                                    **Diane Helphrey**
                                    Assistant Federal Defender
                                    ATTORNEY FOR DEFENDANT

cc:  Melisa Zaehringer, AUSA

CERTIFICATE OF SERVICE
I hereby certify that on June 6, 2024, I electronically
filed this document with the Clerk of Court using the ECF
system which will serve it on the appropriate parties.
/s/
